IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 8:08CR21 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| MARTIN ROCHA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This Sentencing Memorandum supplements findings made on the record at defendant's sentencing hearing on June 27, 2008.

## I. BACKGROUND

Defendant was charged in a four-count indictment with drug trafficking in violation of 21 U.S.C. §§ 841 and 846. He entered a plea of guilty to the charge of conspiracy to distribute and possess with intent to distribute more than 500 grams of a methamphetamine mixture. That offense carries a statutory mandatory minimum sentence of ten years to a maximum of life. 21 U.S.C. § 841(b)(1)(B). In the plea agreement, the defendant agreed that he should be held responsible for 15 kilograms or more of methamphetamine and that his base offense level under the United States Sentencing Guidelines ("Guidelines") would be 38. The government agreed to move for a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The parties further agreed that the defendant was not subject to either an upward or downward adjustment in the offense level pursuant to U.S.S.G. § 3B1.1 or 3B1.2.

The United States Office of Probation (hereinafter, "the Probation Office") prepared a Presentence Investigation Report (hereinafter, "PSR") that calculated the defendant's

Guidelines sentence. The facts outlined in the PSR are gleaned from the prosecutor's version of events, investigative reports and conversations with the Assistant United States Attorney. The PSR relates that a cooperating defendant stated in a proffer interview that he had received one-quarter pound of methamphetamine from Rocha every day to every other day from November 2006 to November 2007 and had once observed Rocha with a kilo of methamphetamine. The Probation Office determined that Rocha should be held responsible for 20.6 kilograms of methamphetamine, which it calculated by extrapolating the reported sales of one-quarter of a pound of methamphetamine every two days over the course of a year. The PSR also states that a confidential informant made two controlled purchases, in one-half ounce and one ounce quantities, of methamphetamine from Rocha. No defense version of events was submitted to the Probation Office.

The Probation Office identified U.S.S.G. § 2D1.1(a)(3)(c)(1) as the applicable base offense level provision under the Guidelines and determined that defendant's base offense level should be 38 under that provision. The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 35. It then determined that defendant's criminal history category was III, as the result of 5 criminal history points. Three points were assessed for a conviction for delivery of methamphetamine for which Rocha was sentenced to 48 months in prison and two points were assessed for commission of this offense within two years of his release from imprisonment on another charge. Rocha's resulting advisory Guidelines sentencing range is 210 to 262 months. The government adopted the information and materials in the PSR.

At the sentencing hearing, Rocha moved for a variance from the Guidelines. Defense counsel argued that the defendant had agreed to the drug quantity in anticipation of an eventual motion to reduce his sentence because of his cooperation. He stated that he would ordinarily challenge a quantity determination that was based only on the statement of one cooperating witness, with no corroboration, but that the defendant had agreed to the quantity as a takeoff for the motion for reduction of sentence. He also argued that the quantity figure was inflated because of the fact that it had been calculated over the course of a long period of time. Further, he argued that in the scheme of the typical drug trafficking organization, Rocha was a dealer who dealt in terms of ounces, rather than larger quantities. Defense counsel further pointed out the absence of any history of violence in Rocha's criminal record. The government acknowledged that it anticipated moving for a reduction of Rocha's sentence, and admitted that it saw some merit to Rocha's arguments, but felt that the proper time to resolve the issue was at the time the Rule 35 motion was filed.

## II. DISCUSSION

### A. Law

The United States Supreme Court has determined that a mandatory federal sentencing guidelines system violates the Sixth Amendment. *United States v. Booker,* 543 U.S. 220, 226-27 (2005). The constitutional infirmity has been remedied by interpreting the Guidelines as advisory. *Id.* at 245. The range of choice in sentencing dictated by the facts of the case has been significantly broadened since the *Booker* decision. *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines range was reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S.

Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. —, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines).

Under the Sentencing Reform Act, as modified by *Booker,* judges are required "to take account of the Guidelines together with other sentencing goals" when fashioning a defendant's sentence. *Booker,* 543 U.S. at 261. As the Supreme Court recently clarified in *Gall*, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall,* 552 U.S. at —, 128 S. Ct. at 596 ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."); *United States v. Hernandez,* 518 F.3d 613, 616 (8th Cir. 2008). However, the Guidelines are not the only consideration. *Gall,* 552 U.S. at —, 128 S. Ct. at 596. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* District courts must therefore "give respectful consideration to the Guidelines," but should "tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* 552 U.S. at —, 128 S. Ct. at 596.

In doing so, however, the district court "may not presume that the Guidelines range is reasonable." *Gall,* 552 U.S. at —, 128 S. Ct. at 596; *see also Rita*, 551 U.S. at —, 127 S. Ct. at 2465 (stating that appellate courts may apply a presumption of reasonableness

4

to a within-Guidelines sentence, but the presumption does not apply to sentencing courts). The district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring) (stating that "any thumb on the scales," that would indicate that the "the Guidelines must be followed even where the district court's application of the § 3553(a) factors is entirely reasonable" would violate the Sixth Amendment because "the 'advisory' Guidelines would, over a large expanse of their application, *entitle* the defendant to a lesser sentence *but for* the presence of certain additional facts found by judge rather than jury") (emphasis in original).

Post-*Booker*, if the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Gall,* 552 U.S. at ___, 128 S. Ct. at 596-97. The Supreme Court has rejected, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" as well as "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.*, 552 U.S. at —, 128 S. Ct. at 595; *see also Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (noting that a sentencing judge has greater familiarity with an individual case and an individual defendant than either the Commission or the appeals court and is therefore in a superior position to find facts and judge their import under § 3353(a) in each particular case). The district court "must make an individualized assessment" of each case "based on the facts presented." *Gall*, 552 U.S. at —, 128 S. Ct. at 597.

5

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570. The general goals of sentencing require consideration of "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). Also, the statute "provides that, in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' and 'the history and characteristics of the defendant.'" *Id.*, § 3553(a)(1). The court must also consider "the kinds of sentences available," the Sentencing Guidelines and relevant policy statements, the need to avoid sentencing disparities, and the need to provide restitution to any victim. *Id.,* § 3553(a)(3)-(7).

The Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparency of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004) (hereinafter, "Fifteen-Year Assessment"). The Sentencing Commission ("the Commission") was originally charged by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation. *Id.* at 12-13. Toward that end, the Commission developed

6

and used data on past practices and recidivism in formulating the Guidelines. *See Id.* at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. The Commission established the base offense levels for each crime, linked to a recommended imprisonment range, based on sentencing statistics. Fifteen-Year Assessment at 14. Accordingly, the Guidelines represent a reasonable estimation of a fair sentencing range in many cases. *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 564 (noting that in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives). However, when certain guidelines "do not exemplify the Commission's exercise of its characteristic institutional role" the Guidelines are deserving of less respect. *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 575; *Gall*, 552 U.S. at —, 128 S. Ct. at 594 n.2 (recognizing that "not all of the Guidelines are tied to . . . empirical evidence" and noting that a district court's authority to deviate from the Guidelines is affected by that fact). In such cases, it is not an abuse of discretion for a district court to conclude, in sentencing a particular defendant, that the application of the guideline range would yield a sentence "greater than necessary" to achieve the purposes set out in § 3553(a). *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 574-75; *see also Rita*, 552 U.S. at —, 127 S. Ct. at 2464-65.

For policy reasons, and to conform to statutory mandatory minimum sentences, the Commission did not employ its characteristic empirical approach when setting the Guidelines ranges for drug offenses. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567; Fifteen-Year Assessment at 15, 72-73. Instead, the Commission attempted "to

accommodate and, to the extent possible, rationalize mandatory minimum provisions established by the 1986 Anti-Drug Abuse Act" by anchoring the Guidelines to the mandatory minimum sentences. United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991), accessed at www.ussc.gov/reports.htm (hereinafter, "Mand. Min. Rep't"), Summary at ii; Rep't at 17 n. 58.

The Commission thus adopted "the 1986 [Anti-Drug-Abuse] Act's weight-driven scheme." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567; *see United States v. Chapman*, 500 U.S. 453, 461 (1991) (stating that the Anti-Drug Abuse Act of 1986 provided for mandatory minimum sentences based on the weight of various controlled substances according to a "market-oriented" approach, creating a penalty scheme intended to punish large-volume drug traffickers severely). "The 1986 Act uses the weight of the drugs involved in the offense as the sole proxy to identify 'major' and 'serious' dealers."[1] *Kimbrough,* 128 S. Ct. at 567. The resulting Guidelines ranges for drug trafficking offenses are driven by the quantity of drugs, and keyed to statutory mandatory minimum sentences based on weight. *Gall,* 128 S. Ct. at 594 & n.2; *Neal v. United States*, 516 U.S. 284, 291-92 (1996) (noting that in spite of "incongruities between the Guidelines and the mandatory sentencing statute," the Commission developed Guidelines to parallel the mandatory minimum sentences set out in 21 U.S.C. § 841(b)(1), using the quantities and sentences

---

[1] Although both the mandatory minimum statutes and the Guidelines calibrate punishment of drug traffickers according to quantity, the Supreme Court has acknowledged that mandatory minimum sentences are both structurally and functionally at odds with sentencing guidelines and the goals the Guidelines seek to achieve, noting that "the guidelines produce a system of finely calibrated sentences with proportional increases whereas the mandatory minimums result in 'cliffs.'" *Neal,* 516 U.S. at 291 (1996). Nonetheless, the Supreme Court has continued to affirm the scheme, leaving it to Congress to correct its disparities. *Id.*; *United States v. LaBonte,* 520 U.S. 751, 764 (1997). Congress has not done so.

derived from the statute and "[t]he weight ranges reflect the Commission's assessment of equivalent culpability among defendants who traffic in different types of drugs. . . ").

Noting that larger drug dealers were subject to a mandatory minimum of ten years for a first offense and twenty years for a subsequent conviction for the same offense, the Sentencing Commission stated that "[the Act] sought to cover mid-level players in the drug distribution chain by providing a mandatory minimum penalty of five years." *Id.* at 10. Later, in "[p]erhaps the most far-reaching provision of the Omnibus Anti-Drug Abuse Act of 1988," Congress made the mandatory minimum penalties that were previously applicable to substantive distribution and importation/exportation offenses apply also to conspiracies to commit those substantive offenses, increasing "the potential that the applicable penalties could apply equally to the major dealer and the mid- or low-level participant." *Id.* at 10.

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen Year Assessment at 23-24. To that end, prosecutors have been directed to "charge and pursue the most serious, readily provable offense or offenses that are supported by the facts of the case, except in limited, enumerated circumstances."[2] *Id.* at 24. Empirical evidence shows that charging and plea bargaining practices continue to introduce significant disparities into the sentencing regime. Fifteen-Year Assessment, Executive Summary at xii. The

---

[2]In this court's experience, the Department of Justice does not always "charge and pursue the most readily provable" (beyond a reasonable doubt) crime, especially in drug prosecutions, with the result of introducing more disparity in the system. *See Booker*, 125 S. Ct. at 782 & n.11 (Stevens, J., dissenting in part) (gathering authorities and noting that "a prosecutor who need only prove an enhancing fact by a preponderance of evidence has more bargaining power than if required to prove the same fact beyond a reasonable doubt").

Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." Mand. Min. Rep't at 14-15. The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

### B. Analysis

#### 1. Initial Guidelines Calculation

The court adopts the findings in the PSR and finds that defendant's base offense level under the Guidelines is 35, his criminal history category is III and his sentencing range of imprisonment is 210 to 262 months.

#### 2. 18 U.S.C. § 3553(a) Factors

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of 168 months (fourteen years) is sufficient, but not greater than necessary to accomplish the goals of sentencing. In consideration of the nature and circumstances of the offense and the history and characteristics of the defendant, the court notes that the quantity determination in this case was based on the uncorroborated testimony of a single cooperating witness. Because the quantity determination is based

on an amalgamation of smaller sales over a long period of time, the quantity is skewed and does not reflect the defendant's culpability. The court finds that Rocha is at most a mid-level distributor, but more than a street-level supplier. The defendant was indicted for and has admitted to facts that require the imposition of a mandatory minimum sentence in this case. The court finds that the defendant's prior drug trafficking conviction warrants some period of incarceration above and beyond the mandatory minimum. A sentence of seventeen and a half years, the low end of the Sentencing Guidelines range, which is more than four times as long as the defendant's previous incarceration, seems unnecessarily long to further the objectives of sentencing. In connection with this determination, the court notes that the defendant has no history of violence and will most likely be deported after completion of his sentence.

Also, although the government indicates that a motion for a reduction of sentence for substantial assistance may be offered in the future, such a motion is in the sole discretion of the government. The defendant's ultimate sentence after such a motion will be determined as a percentage of this court's initial sentence, so the court's determination of the 3553 factors at this time will have some impact on the defendant's ultimate sentence. The court is reluctant to sentence the defendant to an unduly harsh sentence at this time, relying on the uncertain prospect of a later motion to reduce the sentence. Nevertheless, a sentence of this length is not such a substantial variance from the Guidelines range that it would unduly influence the defendant's credibility or his incentive to provide substantial assistance to the government.

The court has considered the Sentencing Guidelines and has taken them into account. Because the Guidelines for drug crimes were not developed within the realm of

the Commission's empirically-grounded special expertise, they are not entitled to the same level of deference as some Guidelines would be. Also, the Guidelines' quantity-driven, "market-oriented" approach is not a proxy for culpability in every case, nor does it always correlate to the purposes of sentencing under 18 U.S.C. § 3553(a). Drug quantity is only an accurate measure when it corresponds to a defendant's position in the typical hierarchy that characterizes most drug conspiracies. Where the defendant falls in this hierarchy is an important factor in the court's assessment of a defendant's ultimate culpability. Although the quantity-based system was designed to punish bigger distributors more harshly, the practice of charging a defendant with a conspiracy that covers a long period of time aggregates many small distributions and creates the impression that a long-term, small-quantity distributor is a large-quantity distributor.[3] The government's control over the number and amount of controlled buys from undercover or cooperating agents, which drives the quantity and consequently the length of the sentence, can add another element of happenstance or fortuity to the quantity determination. Here, there appears no dispute that the defendant is only a mid-level distributor. To sentence the defendant as though he were a large-scale distributor, which the distribution of a quantity of 15 kilograms would imply, would not accurately reflect the court's assessment of the defendant's culpability in this case.[4] The court has also considered the need to avoid unwarranted disparity in

---

[3] For example, a distributor responsible for selling one gram at a time a hundred times gets the same sentence as the dealer caught selling 100 grams only once.

[4] Because of the charging discretion afforded to prosecutors, especially in the context of a defendant with prior drug convictions, a small- or mid-level distributor is left with few options other than to plead to a higher quantity than that which the government could readily prove.

sentencing and finds that a sentence of fourteen years is in line with the sentences of other drug-distribution conspirators with similar levels of culpability.

The court finds that this sentence satisfies the general purposes of sentencing, including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The length of the defendant's sentence will afford adequate deterrence to criminal conduct of this nature. A sentence of this length will adequately protect the public from the defendant's his future crimes. The court's imposition of a five-year period of supervised release and the fact that he is subject to deportation will also serve to protect the public in the future.

### III.  CONCLUSION

The court finds that to sentence this defendant to the term recommended under the Guidelines, seventeen and a half years at the low end, would violate the Sentencing Reform Act's overarching instruction that the court impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing. For the reasons stated above, the court finds defendant Martin Rocha should be sentenced to 168 months' incarceration. A Judgment of Conviction in conformity with this Sentencing Memorandum will issue this date.

DATED this 29th day of July, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge